The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL MAINTENANCE CONTRACTORS, LLC *et al*.<br><br>Defendants. | Civil Action No. 2:21-cv-638-BJR<br><br>ORDER GRANTING MOTION TO REMAND |

## I.     INTRODUCTION

The State of Washington ("Washington"), through its Attorney General, filed this *parens patriae* lawsuit against Defendants National Maintenance Contractors, LLC, NMC Franchising, LLC, Marsden Holding, LLC, and Encore One, LLC (collectively "Defendants") in King County Superior Court. Washington alleges that Defendants—who market, sell, and operate janitorial franchisees in the State of Washington—violated the Washington Consumer Protection Act, Wash. Rev. Code § 19.86 ("WCPA") and the Washington Franchise Investment Protection Act, Wash. Rev. Code § 19.100 ("FIPA"). Defendants removed the lawsuit to this federal district court, asserting federal diversity jurisdiction.

Currently before the Court is Washington's motion to remand the matter back to King Court Superior Court pursuant to 28 U.S.C. § 1447(c). Dkt. No. 17. Defendants oppose the motion. Dkt. No. 19. Having reviewed the motion, opposition thereto, the record of the case, and the legal authorities, the Court will grant the motion. The reasoning for the Court's decision follows.

## II.   BACKGROUND

The Attorney General for the State of Washington filed this action in King County Superior Court against Defendants on April 6, 2021, alleging that Defendants violated the WCPA and FIPA in connection with the marketing, sale, and operation of janitorial franchises in the state of Washington. Washington claims that Defendants are one of the largest privately-owned facility service providers in the United States, operating in ten states and generating over $90 million in revenue annually. Dkt. No. 16 at ¶¶ 5.5, 5.7. According to Washington, Defendants have "enrolled hundreds of Washingtonians into its franchising system" and that Defendants specifically target non-English speakers with limited education and little or no franchising experience. *Id*. at ¶ 5.28; ¶ 5.25. Washington claims that Defendants lured these vulnerable, low-wage consumers into investing thousands of dollars—in some cases their life savings—in up-front and ongoing monthly fees to buy janitorial franchises based on false promises, including that they will be their own boss and can build a profitable business when, in reality, they were "buy[ing] cleaning jobs for which they earn less than the minimum wage." *Id*. at p. 1.

According to Washington, Defendants engage in unfair and deceptive acts and practices by failing to adequately disclose material facts to prospective franchisees, presenting franchisees with unfair and unconscionable franchise agreement terms, failing to provide franchisees with the monthly gross sales volume they purchased, unfairly underbidding client accounts, failing to disclose earnings on franchisee-serviced accounts, charging franchisees excessive fees, imposing

unreasonable and/or unnecessary requirements on franchisees, and causing franchisees to work for less than minimum wage. Washington further alleges that Defendants' predatory and deceptive acts harm not only the franchisee owners and employees, but the entire Washington marketplace, which has to contend with Defendants' artificially low pricing for janitorial services. Washington alleges that Defendants' actions are "not reasonable in relation to the development and preservation of business" in Washington and "are inconsistent with the public interest." *Id.* at ¶ 6.67. Thus, Washington filed "this enforcement action to prevent and remedy Defendants' unfair and deceptive business practices and vindicate the public interest." *Id.* It seeks declaratory and injunctive relief, civil penalties, and restitution for the franchisee owners.

Defendants removed the matter to federal court on May 13, 2021, asserting federal jurisdiction based on diversity of citizenship of the parties. Defendants allege that the Washington franchisee owners—not the State of Washington—are the real parties in interest in this action and, as such, diversity of citizenship exists because Defendants are citizens of Minnesota, South Dakota, and Georgia.

### III.   DISCUSSION

A.   **Motion to Remand**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, a defendant may remove an action originally filed in state court only if the federal court would have original jurisdiction over the subject matter of the action—that is, if the action either raises a federal question or meets the requirements for diversity jurisdiction. 28 U.S.C. §§ 1331, 1332(a), 1441(a)-(b). When reviewing a notice of removal, "'[i]t is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Hunter v. Philip*

*Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006)) (quotation marks omitted) (alterations in original). Courts "strictly construe the removal statute against removal jurisdiction," and "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

Here, Defendants assert that this Court has original jurisdiction because the requirements for diversity jurisdiction are met in this case. To exercise diversity jurisdiction, a federal court must find complete diversity of citizenship among the adverse parties, and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). A court ordinarily looks to the face of the complaint to determine whether diversity of citizenship exists. *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985). Plaintiff in this case is the State of Washington; however, a state is not a citizen of itself and thus cannot be party to a diversity action. *Fifty Assocs. v. Prudential Ins. Co.*, 446 F.2d 1187, 1191 (9th Cir. 1970); *Great American Ins. Co. of New York v. Jackson County School District No. 9*, 478 F. Supp. 2d 1227, 1236 (D. Oregon 2007) (noting that a state is not a "citizen" for purposes of diversity jurisdiction). Therefore, looking to the face of the complaint, diversity jurisdiction does not appear to exist in this matter.

Nevertheless, the mere presence on the record of the state as a party plaintiff will not defeat the jurisdiction of the federal court when it appears that the state has no real interest in the controversy. *See Ex parte Nebraska*, 209 U.S. 436, 444-445 (1908). Therefore, a court must look "behind the face of the record" and identify the real party in interest in the lawsuit. *Missouri, K. & T. Ry. Co. of Kansas v. Hickman*, 183 U.S. 53, 54 (1901).

Here, Defendants assert that the real parties in interest are the Washington franchisees and that, as a result, diversity of citizenship exists. According to Defendants, Washington is not the real party in interest because (1) "the relief it seeks [in this action] does not inure to [Washington] alone" and (2) "it has not asserted a substantial state interest [that is] separate and distinct from the relief it seeks on behalf of the allegedly aggrieved Washington [] franchisees". Dkt. No. 19 1-2. Defendants are wrong on both counts. The Court will address the latter argument first.

### 1.     Washington has an important interest in this lawsuit

As stated above, Washington brings this *parens patriae* enforcement action through its Attorney General pursuant to the WCAP and the FIPA, alleging that Defendants' deceptive practices and actions have not only harmed the Washington franchisees, but they have harmed Washington's marketplace because it has had to contend with Defendants' artificially low pricing for janitorial services. The Ninth Circuit has long recognized that Washington has an important interest in "protect[ing] its consumers from unfair and deceptive trade practices by prosecuting and penalizing those who violate the [WCAP]." *Williams v. State of Washington*, 554 F.2d 369, 370 (9th Cir. 1977); *see also*, *Nevada v. Bank of America Corp.*, 672 F.3d 661, 671 (9th Cir. 2012) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 560593, at *5 (N.D. Cal. Feb. 15, 2011) ("[t]he States of California and Washington are the real parties in interest because both States have a sovereign interest in the enforcement of their consumer protection and antitrust laws … [and] in securing an honest marketplace and economic well-being of their citizens."). This Court has also routinely recognized Washington's strong interest in protecting its marketplace. *See*, *e.g.*, *Washington v. CLA Estate Services, Inc.*, 2018 WL 2057903, *1 (W.D. Wash. May 3, 2018) (noting the state's "quasi-sovereign interest in guaranteeing an honest marketplace and the economic welfare of its citizenry"); *Coe v. Philips Oral Healthcare Inc.*, 2014 WL 5162912, *3 (W.D. Wash.

Oct. 14, 2014) ("Washington has a strong interest in promoting a fair and honest business environment in the state, and in preventing its corporations from engaging in unfair or deceptive trade practices in Washington or elsewhere.").

Defendants attempt to distinguish the foregoing precedent by arguing that Washington cannot establish that Defendants' alleged deceptive actions impacted enough Washington citizens to rise to the level of a state interest. Defendants cite no case law for the proposition that some minimum number of affected consumers is required for the state to be the real part in interest in a *parens patriae* action and this Court declines to create one now. As stated above, Washington alleges that Defendants have "enrolled hundreds of Washingtonians into its franchising system" and through its unfair and deceptive practices, forces those individuals to work for less than minimum wage. Dkt. No. 16 at ¶¶ 5.28, 5.114, 5.117. Not only does Washington allege that Defendants' unfair actions affect those hundreds of Washingtonians, but the state further alleges that its marketplace has been forced to contend with the artificially low pricing Defendants have injected into the marketplace, impacting an unknown number of additional Washingtonians. Washington alleges that these actions necessarily negatively impact the development and preservation of business in the state marketplace and are, thus, against Washingtonian's public interest. *See, e.g.*, ¶ 6.23. These allegations, if taken as true, are sufficient to establish that Washington is the real party in interest in this lawsuit.

    **2.   Washington's interest is not diminished because it also seeks restitution**

Nor is this Court persuaded by Defendants' argument that Washington cannot be the real party in interest in this lawsuit because it is seeking relief that "does not inure to it alone." Dkt. No. 19 at 1. Defendants contend that because Washington seeks restitution on behalf of the franchisee owners in addition to the other requested relief, the franchisee owners are the real parties in interest

in this lawsuit. In making this argument, Defendants rely on a 120-year-old case—*Missouri, Kansas, & Texas Railway Co. v. Hickman*, 183 U.S. 53 (1901)—but concede as they must that "many recent federal district courts and/or circuit courts, including the Western District of Washington, have distinguished *Hickman*…." Dkt. No. 19 at 4, fn. 2. Indeed, Defendants' "position that a state cannot claim real party in interest status when it sues for broad prospective relief and also for restitution for a limited set of consumers has been rejected by the majority of courts," including the Ninth Circuit. *CLA Estate Services*, 2018 WL 2057903, *1 (W.D. Wash. May 3, 2018); *see also Nevada*, 672 F.3d at 671 ("Nevada's sovereign interest in protecting its citizens and economy from deceptive mortgage practices is not diminished merely because it has tacked on a claim for restitution."); *AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 394 (4th Cir. 2012) ("We therefore agree with the Ninth and Seventh Circuits that a claim for restitution, when tacked onto other claims being properly pursued by the State, alters neither the State's quasi-sovereign interest in enforcing its own laws, nor the nature and effect of the proceedings. The purpose of these cases is the protection of the State's citizens and upholding the integrity of South Carolina law. The State, in these *parens patriae* actions, is enforcing its own statutes in seeking to protect its citizens against price-fixing conspiracies. That the statutes authorizing these actions in the name of the State also permit a court to award restitution to injured citizens is incidental to the State's overriding interests and to the substance of these proceedings. Those citizens are not named plaintiffs here, and they need not be considered in the diversity analysis of the State's claims. Thus, CAFA's minimal diversity requirement is not satisfied in either of these cases, and the district court properly remanded them to state court."); *In re Standard & Poor's Rating Agency Litigation*, 23 F. Supp. 3d 378, 406, (S.D.N.Y. 2014) ("[A]s the overwhelming weight of authority makes clear, the fact that individual Mississippi consumers could ultimately benefit financially from a favorable resolution

of this case 'does not minimize or negate the State's substantial interest.'"). Likewise, the Washington Supreme Court has specifically noted that the Attorney General's statutory authority to seek consumer restitution is intended for the general public benefit. *State v. LG Elecs., Inc.*, 375 P.3d 636, 643 (Wn. 2016). Thus, this Court concludes that Washington's "sovereign interests in protecting its citizens and economy…is not diminished simply because it tacked on a claim for restitution." *CLA Estate Services*, 2018 WL 2057903, *2 (W.D. Wash. May 3, 2018).

The United States Supreme Court has cautioned that removal statutes must be strictly construed, particularly when a case brought by a state in its own courts is removed to a federal court. As the Supreme Court has noted, "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. V. Construction Laborers Vacation Trust*, 463 U.S. 1, 21 n. 22 (1983). Here, Defendants have failed to meet this high burden. Thus, the motion for remand must be granted.

**B.     Motion for Fees**

Washington requests that this Court award Washington its fees and costs associated with Defendants' removal of this matter to federal court. 28 U.S.C. § 1447(c) permits a plaintiff to recoup fees and costs when a defendant has improperly removed a case. *See Baddie v. Berkeley Farms, Inc.*, 64 F.3d 487, 490 (9th Cir. 1995). The Court finds that such an award is appropriate here because there was no objectively reasonable basis for Defendants to remove this matter. *See CLA Estate Services, Inc.*, 2018 WL 2057903, *2 (W.D. Wash. May 3, 2018). Indeed, Defendants do not address Washington's request for fees. As such, Defendants are ordered to pay for the "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Washington shall submit a request for fees and costs with declarations and a proposed order to that effect within ten (10) days of the filing of this order. Defendants shall have

seven (7) days to file a response if they so choose and Washington's reply shall be filed within three (3) days of Defendants' response.

### IV.   CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS the motion to remand this matter back to King County Superior Court.

Dated this 31st day of August 2021.

*Barbara J. Rothstein*
Barbara  Jacobs  Rothstein
U.S. District Court Judge